# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**ANDY FLORES**                                                            **PETITIONER**

**VS.**                     **NO. 2:22-CV-00066-BSM-ERE**

**JOHN YATES, Warden,**
**FCI-Forrest City**                                           **RESPONDENT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

**I.   INTRODUCTION**

Andy Flores, a prisoner in the Federal Correctional Institution in Forrest City, Arkansas ("FCI-FC"), has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging two disciplinary convictions. For reasons that follow, the Court recommends that petition be denied, and the case be dismissed with prejudice.

## II. BACKGROUND

On June 4, 2019, Mr. Flores pleaded guilty to being a felon in possession of a firearm in the Western District of Texas, and on August 29, 2019, he was sentenced to a term of fifty-four months in prison. *United States v. Flores*, No. 3:18-cr-03545-DB, ECF Nos. 35, 45 (W.D. Tex. June 4, Aug. 29, 2019). His projected release date with good conduct time is January 12, 2023. *Doc. 6-1 at 1*.

### A. December 2019 Disciplinary Conviction

On December 3, 2019, FCI-FC Officer G. Jackson assisted in a mass shakedown operation in Mr. Flores' housing unit. While conducting a pat down search, Officer Jackson detected what he believed was a hard object in Mr. Flores' anal area. *Doc. 6-1 at 104,106*. A body scan revealed nothing, but a strip search showed that Mr. Flores had an object in his sock. *Id*. Officer Jackson wrote an incident report, charging Mr. Flores with possession of a weapon. *Id. at 106.* An investigating officer found that the incident report, a staff member witness statement, and a photograph of the alleged weapon, a handmade, six-inch plastic knife with a sharp point and tape wrapped around the handle (*Id. at 22*), supported the charge of possession of a weapon. *Id. at 19*.

On December 19, 2019 Mr. Flores received notice of the disciplinary charge and a copy of the incident report, and he claimed that the sharp object recovered from his sock was merely a glue stick. *Id. at 18*. On December 26, 2019, Mr. Flores

2

was advised of and waived: (1) his right to call witnesses on his behalf; and (2) his right to a staff representative. *Id. at 15*.

On December 31, 2019, a hearing was held before a Disciplinary Hearing Officer ("DHO"). *Id. at 13*. The evidence presented included the incident report, staff member witness statement, and photograph of the weapon. *Id*. In his defense, Mr. Flores stated, "It was a glue stick." *Id*. He also stated that he had never gone through the FCI-FC's admissions and orientation process, but the DHO noted that upon Mr. Flores' admission to the prison, he received an inmate handbook stating the rules and regulations pertaining to inmate behavior. *Id*. The DHO found that Mr. Flores committed the charged offense, and by way of sanctions, he disallowed Mr. Flores 41 days of good conduct time and 180 days of commissary, phone and visiting privileges. *Id*.

Mr. Flores appealed the DHO's decision, asserting that he had received untimely delivery of the DHO report, which he claimed violated his right to due process. *Doc. 6-1- at 90,117*. Mr. Flores also argued that the plastic object found in his sock was not sharpened and could not have harmed a living thing. *Id*.

An appeals administrator denied Mr. Flores' appeal, finding that the DHO's decision was supported by the evidence, and the sanctions imposed were commensurate with the offense and complied with BOP policy. *Doc. 6-1 at 89*. The appeals administrator also noted that BOP policy provides that the DHO will

3

"ordinarily" give the inmate a written copy of the DHO report within 15 days of a decision, but the policy did not set an absolute deadline or create a due process right. *Id*.

With his § 2241 petition, Mr. Flores challenges his December 2019 disciplinary conviction on the following grounds: (1) he was the subject of an unlawful strip search and seizure in violation of the Fourth Amendment (*Doc. 2 at 7. 11, 12*); and (2) he was "wrongfully charged with possession of a dangerous weapon . . . when he never possessed any weapon of a dangerous nature." *Id. at 11*.

In his response filed June 14, 2022, Respondent argues: (1) Mr. Flores failed to exhaust his administrative remedies as to his Fourth Amendment claim, and the claim is without merit (*Doc. 6 at 5*); and (2) the DHO's decision is supported by substantial evidence. *Id. 6-7*.

In his reply filed July 25, 2022, Mr. Flores maintains: (1) he has exhausted his administrative remedies; and (2) the DHO's findings are not supported by "substantial evidence." *Doc. 9 at 3-4*.

**B.  March 2020 Disciplinary Conviction**

On March 12, 2020, FCI-FC Officer Fox was monitoring an outdoor recreation yard, when he observed Mr. Flores and a second inmate kicking and striking a third inmate, who was on the ground. *Doc. 6-1 at 122*. Officer Fox immediately responded to the scene, and Mr. Flores and the second inmate followed

his orders to cease the attack and move to the ground. *Id*. All three inmates were then restrained and escorted for a medical assessment. *Id*. Officer Fox wrote an incident report, recounting the foregoing events and charging Mr. Flores with assaulting any person. *Id*.

On March 13, 2020, Officer S. Thomas provided Mr. Flores written notice of the disciplinary charge, and Mr. Flores provided the statement, "No comment." *Doc. 6-1 at 121, 123*.

On March 18, 2020, an initial hearing was held before the Unit Discipline Committee ("UDC"). Mr. Flores denied that he had assaulted another inmate and stated that he was only breaking up a fight. *Id at 121-122*. UDC Hearing Officer T. Bradshaw advised Mr. Flores that the matter would be referred for a DHO hearing, and that he had the right to have staff representation and call witnesses. *Doc. 2 at 10*. According to Mr. Flores, he specifically informed Officer Bradshaw that he wanted: (1) staff representative at the DHO hearing; and (2) the ability to interview the victim of the assault, who would corroborate his testimony that he was only trying to break up a fight. *Id*.

Contrary to Mr. Flores' account of events, Respondent presents documentation that Mr. Flores waived his right to staff representation and witnesses. *Doc. 6-1 at 121, 154, 155*. However, Mr. Flores alleges that during a March 25, 2020 hearing on the disciplinary charge, DHO Curtis Glasgow coerced him to sign a

5

waiver of staff representation by threating that he would be locked up in a special housing unit if he delayed the DHO hearing. *Doc. 2 at 11*.

In a declaration, DHO Glasgow states that he advised Mr. Flores of his rights at the beginning of the hearing, and that Mr. Flores waived his right to staff representation but requested to call the victim as a witness. *Id. at 5*. BOP policy provides that an inmate's right to call witnesses at a DHO hearing is subject to the DHO's discretion if a requested witness's presence would jeopardize institutional security. *Id. at 58* (BOP Inmate Discipline Program Statement 5270.09). DHO Glasgow explains:

> It was my judgment that calling the victim of the assault to be a witness at the DHO hearing for the perpetrator would jeopardize institutional security. The evidence presented at the DHO hearing, including the Incident Report, medical records, and photographs, adequately presented the information that the victim would have provided.

*Id. at 5*.

At the DHO hearing, Mr. Flores "adamantly" denied assaulting another inmate and stated that he "was not involved." *Id. at 119*; *Doc. 9 at 2*. DHO Glasgow found that Mr. Flores committed the prohibited act of assaulting any person based on the following evidence: (1) a written statement by Officer Fox, stating that on March 12, he witnessed Mr. Flores strike another inmate with closed fists and kick the inmate's head; (2) supporting memoranda from responding staff, corroborating Officer Fox's incident report; and (3) injury assessments and photographs, including

Mr. Flores's statement to a treating nurse that he had been involved in the incident. *Id. at 5-6, 119*. DHO Glasgow also considered that Mr. Flores had changed his story about his participation in the assault—first refusing to admit or deny his involvement, then claiming that he was breaking up a fight, and finally adamantly denying any involvement. *Id. at 6, 119.* As punishment, DHO Glasgow disallowed Mr. Flores 27 days of good conduct time and denied him 120 days of commissary, phone and visiting privileges. *Id. at 119*. Mr. Flores appealed the DHO decision and fully exhausted his appeal. *Id. at 7*.

In this § 2241 action, Mr. Flores challenges his March 2020 disciplinary conviction on grounds that he was denied the right to staff representation and the right to call witnesses at the March 25 DHO hearing, in violation of his right to due process. *Doc. 2* at 6, 10-11; *Doc. 9 at 1-2*. Respondent argues that Mr. Flores received all procedural protections required by the Due Process Clause. *Doc. 6 at 3-4*.

### III. DISCUSSION

#### A. December 2019 Disciplinary Conviction

##### 1. Search and Seizure

A federal inmate must normally exhaust his administrative remedies before seeking habeas relief under § 2241. *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974). Here, Mr. Flores appealed his December 2019 disciplinary conviction,

asserting: (1) he had received untimely delivery of the DHO report; and (2) the object found in his sock was not a weapon. *Doc. 6-1 at 90, 117*. However, Mr. Flores *did not* challenge his disciplinary conviction on the ground of an illegal strip search. *Doc. 6-1 at 90*. The record confirms that Mr. Flores did not exhaust his administrative remedies as to his Fourth Amendment claim, and he provides no justification for his failure to do so.

The exhaustion requirement in § 2241 cases is judicially created and does not deprive the Court of jurisdiction to consider Mr. Flores' claim on the merits. *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007). Regardless of whether Mr. Flores exhausted his administrative remedies, he cannot successfully challenge his disciplinary conviction by arguing that the weapon found in his sock was the product of an unreasonable strip search. The exclusionary rule does not apply to prison disciplinary proceedings, thus the weapon found in Mr. Flores' sock would not have been subject to suppression on that basis.[1] *Pennsylvania Board of Probation & Parole v. Scott,* 524 U.S. 357 (1998) (noting that the Supreme Court has repeatedly

---

[1] Even if the exclusionary rule applied in prison disciplinary hearings, Mr. Flores's allegations do not support a Fourth Amendment claim. "[P]rison administrators are accorded 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986) (quoting *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)). Mr. Flores argues that the strip search in his case was unreasonable because it followed a "negative" pat down search and a "negative" body scan. *Doc.2 at 12*. These allegations indicate that officers employed the least intrusive means necessary to conduct a search for a dangerous weapon.

declined to apply the exclusionary rule to proceedings other than criminal trials and holding that the rule did not apply to parole revocation hearings); *Stanko v. Rios*, No. 08-3102-JNE-JJG, 2009 WL 1066021, at *3 (D. Minn. April 9, 2009) (holding that the exclusionary rule does not apply in prison disciplinary proceedings).

### 2. Sufficiency of Evidence

Mr. Flores' argument that he "never possessed any weapon of a dangerous nature" attacks the DHO's finding to the contrary. "Under well-established Supreme Court precedent, a prison administrative sanction will stand if there is some evidence to support the sanction." *Gomez v. Graves*, 323 F.3d 610, 612 (8th Cir. 2003) (citing *Superintendent v. Hill,* 472 U.S. 445, 455 (1985)). "Thus, courts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record." *Id.*

Here, Officer Jackson's report, a staff member's witness statement, and a photograph of the sharp, hard plastic object found in Mr. Flores's sock provided overwhelming evidence to support the DHO's finding that Mr. Flores possessed a dangerous weapon. Mr. Flores' challenge to his December 2019 disciplinary conviction is without merit and should be dismissed with prejudice.

### B. March 2020 Disciplinary Conviction

Depriving a prisoner of good conduct time implicates a liberty interest protected by the Due Process Clause. See *Espinoza v. Peterson*, 283F.3d 949, 951

(8th Cir. 2002). In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that where a prison disciplinary hearing may result in the loss of good time credits, the minimum process due includes:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. at 563-67).

Mr. Flores contends that he was coerced into waiving representation, but he provides no evidence to corroborate that claim. In addition, the Due Process Clause does not mandate representation in all prison disciplinary hearings where good time credit is at stake. *Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996). Instead, the right to representation is reserved for use in cases "[w]here an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Id*. (quoting *Wolff v. McDonnell,* 418 U.S. at 570). Mr. Flores does not allege that he is illiterate, and the issues presented in his disciplinary case were not complex. Accordingly, this is not one of the rare cases where representation was required.

Finally, an inmate's right to present witnesses is unavoidably circumscribed by "the penological need to provide swift justice in individual cases[,]" *Ponte v. Real*, 471 U.S. 491, 495 (1985) (citing *Baxter v. Palmigiano*, 425 U.S. 308 (1976)), and "the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Id*. Prison hearing officers should explain, either on the administrative record or in court testimony, "in a limited manner, the reason why witnesses were not allowed to testify." *Ponte*, 471 U.S. at 497. Provided that "the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff*." *Id*.

Here, DHO Glasgow provided legitimate reasons on the administrative record for denying Mr. Flores' request to call the victim of the subject assault as a witness. Given the witness statements and other documentary evidence presented at the hearing, DHO Glasgow reasonably concluded that allowing Mr. Flores to interrogate his alleged victim would unnecessarily jeopardize institutional security. The decision to disallow the witness did not violate Mr. Flores' right to due process.

IV. **CONCLUSION**

IT IS THEREFORE RECOMMENDED, that Petitioner Andy Flores' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (*Doc. 2*) be DENIED, and the case be DISMISSED, WITH PREJUDICE.

DATED this 30th day of August, 2022.

_____
UNITED STATES MAGISTRATE JUDGE